**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 25-2069**

─────────────

In re:  SCHLETTER, INC.,

        Debtor.

------------------------------

CAROL BLACK, Plan Administrator of Liquidating Debtor, Schletter, Inc.,

        Plaintiff – Appellant,

    v.

DENNIS BRICE,

        Defendant – Appellee.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Martin K. Reidinger, Chief District Judge.  (3:23-cv-00457-MR)

─────────────

Argued:  May 6, 2026                                    Decided:  June 29, 2026

─────────────

Before WYNN, Circuit Judge, FLOYD, Senior Circuit Judge, and Adam B. ABELSON, United States District Judge for the District of Maryland, sitting by designation.

─────────────

Affirmed by unpublished opinion. Judge Abelson wrote the opinion, in which Judge Wynn and Judge Floyd joined.

─────────────

Thomas Richard Fawkes, TUCKER ELLIS LLP, Chicago, Illinois, for Appellant. Charles M. Sims, O'HAGAN MEYER PLLC, Richmond, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

ABELSON, District Judge:

Schletter, Inc. ("Schletter"), a wholly-owned subsidiary of Schletter Beteiligungs, GmbH & Co. KG ("Schletter Germany"), was a manufacturer and distributor of racks for solar panel systems. Under the leadership of Dennis Brice, its President and CEO, Schletter developed an upgraded system that Brice believed would be superior to existing systems. Schletter Germany supported the strategy, but the strategy failed. Schletter was left unable to deliver on various large contracts, and filed for Chapter 11 bankruptcy. Carol Black, Schletter's bankruptcy plan administrator, seeks to recover from Brice personally, alleging his business decisions breached fiduciary duties that he owed to Schletter—duties that she seeks to enforce on behalf of Schletter's creditors based on Schletter later becoming insolvent. The bankruptcy court granted summary judgment to Brice, which the district court affirmed, holding that Brice's relevant fiduciary duties were to Schletter Germany rather than to the creditors of its wholly-owned subsidiary, that Black did not have a valid claim for a breach of the duty of oversight against Brice, and that the business judgment rule shielded Brice from liability. For the reasons provided below, we affirm the decision of the district court.

## I.

As discussed more fully below, the facts are viewed in the light most favorable to Black, the non-moving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). But in advancing her arguments, Black may not rely on the allegations in her complaint, Fed. R. Civ. P. 56(e), which is what she has largely attempted to do, *see* Appellant's brief at 9–14 (citing the amended complaint as factual support). The district

3

court previously admonished Black about this practice. *In re Schletter, Inc.*, Case No. 3:23-cv-00457-MR, 2025 WL 2229568, at *2 n.3 (W.D.N.C. Aug. 5, 2025) ("In her appellant brief before this Court, and her memorandum in response to the Defendant's Motion for Summary Judgment before the Bankruptcy Court, the Plaintiff heavily cites to her Amended Complaint. Any cites to the Complaint are allegations, not evidence. The Court will not consider any such allegations at the summary judgment stage of this case.") (record citations omitted). Thus, the facts below are largely taken from the evidence supplied by Brice, but viewed in the light most favorable to Black.

Schletter, a supplier of solar panel rack systems, was incorporated in Delaware and was a subsidiary of Schletter Germany. When Schletter filed for bankruptcy in April 2018, Schletter Germany owned 95% of Schletter's common stock, with the other 5% authorized but unowned and in Schletter Germany's treasury.[1]

Schletter employed Brice as its President and CEO from May 16, 2014 to June 27, 2017. Brice reported to Schletter Germany's board of directors and was "subject to the control" of the board and various agreements between the parent and subsidiary. J.A. 1062.

Schletter sold a solar racking system called FS Uno that had been developed by Schletter Germany. In 2016, Schletter, under Brice's direction, decided to adapt the FS Uno system to make it cheaper, lighter, and easier to install. Schletter called the revised

---

[1] The undisputed evidence in the record establishes that Schletter's previous CEO owned the remaining 5% of the Schletter stock until he was replaced by Brice in 2014, at which time Schletter Germany re-acquired those shares and placed them into its treasury, where they remained during all times relevant to Black's claims.

4

system G-Max. In October 2016, after about six months of analysis and investigation, Brice and other members of Schletter's executive team presented a G-Max "proof of concept" to Schletter Germany's board of directors, a presentation that included a discussion of the potential challenges and risks associated with the project. Schletter Germany's board authorized Brice to proceed with the development of G-Max. During the rollout of the G-Max project, Brice and the leadership team discussed the inherent risks associated with the project as well as its design, testing, engineering, and manufacturing requirements. Brice also investigated the terms of the relevant contracts and whether they would be profitable. The G-Max project team met at least weekly to discuss the project's progress and Brice attended some of those meetings, where he was updated regularly on the status of the project and the risks associated with it. Brice also kept the Schletter Germany board of directors apprised of the progress of the G-Max project, the anticipated costs of the project, and made clear that Schletter would be delivering G-Max to its customers before conducting field testing.

Under Brice's leadership, however, "the G-Max's development, production, and launch all failed" because Schletter could not meet "promised ambitious delivery dates," subjecting Schletter to "substantial liquidated damages provisions." *Schletter,* 2025 WL 2229568, at *3. Brice also had not initiated "any testing on the G-Max, which further complicated the production process and caused [Schletter] to underestimate (1) the cost of the G-Max, (2) [Schletter's] capacity to produce the G-Max, and (3) how difficult it would be for customers to install the G-Max." *Id.* Brice's employment was terminated for cause on June 27, 2017, but he was not given any specific reason for the termination.

Schletter filed for Chapter 11 bankruptcy in April 2018. *Id.* On October 22, 2020, Schletter filed this adversary proceeding against Brice (and others, the claims against whom were later dismissed). *Id.* After discovery, Brice moved for summary judgment, which the bankruptcy court granted after a hearing. *Id.* The bankruptcy court held that Brice was protected by the business judgment rule and that he did not breach any fiduciary duties, including the duty of oversight, which is commonly known as a *Caremark* claim.[2]

Black appealed and the district court affirmed the grant of summary judgment. *Id.* at *1. The district court first explained that "a wholly-owned subsidiary is to be managed solely so as to benefit its corporate parent," and thus Brice as the subsidiary Schletter's CEO primarily owed fiduciary duties to Schletter Germany, the sole shareholder. *Id.* at *6 (quoting *Cochran v. Stifel Fin. Corp.*, Case No. CIV. A. 17350, 2000 WL 286722, at *11 (Del. Ch. Mar. 8, 2000), *aff'd in part, rev'd in part on other grounds*, 809 A.2d 555 (Del. 2002)). Although 5% of Schletter's stock was not technically owned by Schletter Germany during the period in which Brice made the challenged decisions and instead had been deposited in Schletter Germany's treasury, the district court explained that Schletter was still wholly-owned by Schletter Germany because the latter "held *all* of the *outstanding* stock of the" former. *Id.*

---

[2] *Caremark* claims are named after *In re Caremark International, Inc. Derivative Litigation*, in which the Delaware Chancery Court held that directors and officers can be held liable under some circumstances for breaching their duty to properly oversee a corporation's business. 698 A.2d 959, 967–72 (Del. Ch. 1996).

6

Second, the district court held that Black had failed to produce evidence that would support a *Caremark* claim based on Brice's alleged breach of his duty to adequately monitor and oversee the roll-out of the G-Max project. *Id.* at *7–8. The court explained that "[t]ypical *Caremark* claims 'arise from a failure to properly monitor or oversee employee misconduct or violations of law,'" *id.* at *7 (quoting *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 123 (Del. Ch. 2009)), while "[t]he business judgment rule . . . applies when a fiduciary's *business decisions* are challenged," which was the crux of Black's allegations, *id.* (citing *Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1139 (Del. Ch. 2024)). The district court continued that "[w]here the facts give rise to a *Caremark* claim, the business judgment rule does not apply." *Id.*

Third, the district court held that there was no evidence that Brice breached any fiduciary duties, but rather made business decisions that are subject to review under the business judgment rule. *Id.* at *8.

Black timely filed a notice of appeal.

## II.

Federal Rule of Bankruptcy Procedure 7056 provides that "Fed. R. Civ. P. 56 applies in an adversary proceeding," such as the one at issue in this appeal. "On appeal from a district court's order affirming an order of a bankruptcy court, this court reviews the decision of the district court *de novo* . . . and applies the same standard of review that the district court applied to the bankruptcy court's decision." *In re Wilson*, 149 F.3d 249,

7

251–52 (4th Cir. 1998). Just as Rule 56 governed the analyses below, it governs this Court's analysis.

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or . . . part of [any] claim or defense"—by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party carries this burden, then the court will award summary judgment unless the non-moving party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

All parties agree that the substantive law governing Black's claims is Delaware law. *See Schletter*, 2025 WL 2229568, at *4 ("It is undisputed that Delaware law governs the disposition of this case.").

8

This Court has jurisdiction pursuant to 28 U.S.C. § 158(d), as Black appeals from the district court that heard Black's appeal from a judgment of the bankruptcy court.

**III.**

Black argues that the district court's affirmance of the bankruptcy court's grant of summary judgment to Brice should be reversed because (A) Brice owed fiduciary duties to Schletter's creditors that he breached and (B) Black asserted a valid *Caremark* claim rendering the business judgment rule inapplicable.

**A.**

Black first argues that Brice owed fiduciary duties of loyalty and care to Schletter and, ultimately, to Schletter's creditors, in addition to those owed to Schletter's only shareholder, Schletter Germany. Under Delaware law, when a solvent subsidiary is wholly-owned by the parent, "the [fiduciaries] of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders." *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988); *see also In re Tropicana Ent., LLC*, 520 B.R. 455, 470–71 (Bankr. D. Del. 2014) (explaining that "Delaware law requires a subsidiary's [fiduciaries] to manage the subsidiary with loyalty to the parent, even if the [fiduciaries'] actions make the subsidiary less valuable" because "wholly-owned subsidiaries are formed by parents for the benefit of the parents") (citing *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 201 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007)). One corollary to that rule is that, when a company is solvent, "the general rule is that [fiduciaries] do not owe creditors duties beyond the relevant contractual terms." *N. Am. Cath. Educ.*

9

*Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) (citations omitted). The rule expressed in *Anadarko* and *Gheewalla* is not applicable when the subsidiary is *insolvent*, however, because "[w]hen a corporation is *insolvent* . . . its creditors take the place of the shareholders as the residual beneficiaries of any increase in value." *Id.*

Black has not proffered any evidence that Schletter was insolvent at any time during Brice's employment. The sole evidence she points to is a report prepared by a forensic accounting firm, BDO USA, LLC, retained by the Official Committee of Unsecured Creditors of Schletter, Inc. But the earliest date of insolvency identified in that report is June 30, 2017—three days after Schletter fired Brice. Therefore, there is no evidence that the company was insolvent at the time of any of Brice's decisions that Black challenged though her adversary proceeding. Thus, during the relevant period, Brice owed fiduciary duties to Schletter Germany, not to Schletter's creditors. At oral argument, Black's counsel argued that given the temporal proximity between Brice's termination and the period for which there is evidence of Schletter's insolvency, a reasonable factfinder could conclude that Schletter was in the "zone of insolvency" prior to Brice's termination. But in *Gheewalla*, the Delaware Supreme Court held that "[w]hen a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors [and officers] does not change"; they "must continue to discharge their fiduciary duties to the corporation and its shareholders by exercising their business judgment in the best interests of the corporation for the benefit of its shareholder owners" and, thus, "no direct claim for breach of fiduciary duties may be asserted by the creditors of a solvent corporation" even if it "is operating in the zone of insolvency." 930 A.2d at 101.

10

Because there is no evidence in the record from which a reasonable factfinder could conclude that Brice owed duties to Schletter's creditors at the time of the decisions that Black challenges, Black's breach-of-fiduciary-duty claim fails as a matter of law, as the district and bankruptcy courts correctly held.

**B.**

Second, Black argues that she asserted a valid *Caremark* claim against Brice. The district and bankruptcy courts disagreed with Black's assertion, as do we. To maintain a *Caremark* claim, "a plaintiff must allege particularized facts supporting a reasonable inference that either" (1) the fiduciaries "utterly failed to implement any reporting or information system or controls," or (2) "having implemented such a system or controls, [they] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *In re McDonald's Corp. S'holder Derivative Litig.* ("*McDonalds II*"), 291 A.3d 652, 676 (Del. Ch. 2023) (quoting *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)). Black alleges a violation of the second *Caremark* prong. "A plaintiff typically pleads a prong-two *Caremark* claim by alleging that the board's [or management's] information system generated red flags indicating wrongdoing to which the directors [or management] failed to respond." *Id.*

Black alleges that Brice ignored red flags related to the business risks of the failed G-Max launch, rather than red flags related to corporate misconduct or violations of law. But that claim fails for the same reason the Delaware Chancery Court rejected a similar claim in *Citigroup*, 964 A.2d 106. There, the "plaintiffs' *Caremark* claims [were] based on

11

defendants' alleged failure to properly monitor Citigroup's *business risk*, specifically its exposure to the subprime mortgage market" rather than "employee misconduct or violations of law" as would be the case in a "typical *Caremark* case." *Id.* at 123. The Delaware Chancery Court concluded that there was no viable *Caremark* claim, and instead the fiduciary's actions were governed by "the fiduciary duty of care and the business judgment rule" because the plaintiffs were "attempting to hold the director defendants personally liable for making (or allowing to be made) business decisions that, in hindsight, turned out poorly for the Company." *Id.* at 124.

The *Citigroup* court explained that while corporate fiduciaries have "responsibilities to implement and monitor a system of oversight," "this obligation does not eviscerate the core protections of the business judgment rule—protections designed to allow corporate managers and directors to pursue risky transactions without the specter of being held personally liable if those decisions turn out poorly." *Id.* at 125. The court continued that to allow "shareholder plaintiffs to succeed on a theory that a director is liable for a failure to monitor business risk, the Court risks undermining the well settled policy of Delaware law by inviting Courts to perform a hindsight evaluation of the reasonableness or prudence of directors' business decisions." *Id.* at 126; *see also In re McDonald's Corp. S'holder Derivative Litig.* ("*McDonald's I*"), 289 A.3d 343, 376 (Del. Ch. 2023) ("To plead a Red-Flags Claim . . . a plaintiff must plead facts supporting an inference that the fiduciary knew of evidence of *corporate misconduct*" and "that the fiduciary consciously failed to take action in response" that "was sufficiently sustained, systematic, or striking *to constitute action in bad faith*") (emphasis added); *Ontario Provincial Council of Carpenters' Pension*

12

*Tr. Fund v. Walton*, Case No. 2021-0827-JTL, 2023 WL 3093500, at \*33 (Del. Ch. Apr. 26, 2023) ("When directors make a business decision that carries legal risk, but which otherwise involves legally compliant conduct, then the business judgment rule protects that decision. The same principle applies to a board's decision to act or not act in response to red flags.").

Black has not produced evidence from which a reasonable factfinder could conclude that Brice "consciously failed to monitor or oversee its operations thus disabling [himself] from being informed of risks or problems requiring their attention." *McDonald's II*, 291 A.3d at 676 (citation omitted). Instead, as related above, the undisputed evidence shows that Brice kept apprised of the status of the G-Max program and that his objective was to launch an improved product that he believed would be profitable. The risks Black alleges Brice ignored are business risks related to his decisions on how to run Schletter. As discussed in *Citigroup*, such claims do not support a *Caremark* claim and, instead, those decisions are governed by the business judgment rule.[3]

---

[3] Besides arguing that the *Caremark* claim requires the application of a standard of review more stringent than the business judgment rule, Black also argues that a higher standard should apply because Brice was improperly beholden to Schettler Germany. But as discussed above, because Schettler was a wholly-owned subsidiary of Schettler Germany, and because there is no evidence establishing that the company was insolvent during his employment, Brice's duties were to Schletter and Schletter Germany, not Schletter's creditors—and thus he was obligated to follow Schletter Germany's directives. *See Firefighters' Pension Sys.*, 318 A.3d at 1138 (holding that "officers are corporate agents" who owe "a duty of obedience requiring compliance with directives from the principal or from more senior agents").

In other words, the district court here correctly held that "[l]ike the shareholders in *Citigroup*, [Black] fails to show that [Brice] knew or should have known of corporate wrongdoing or unlawful behavior, or that [Brice] consciously disregarded some duty," and instead, Black "with the benefit of hindsight, asks this Court to review the adequacy of [Brice's] past *business decision*: namely, rushing the launch of the G-Max in an attempt to quickly fulfill customers orders." *Schletter*, 2025 WL 2229568, at *8. The district court continued that "[t]his is precisely the type of case that the business judgment rule was created to encompass" and "that the Bankruptcy Court correctly determined that the evidence [did] not give rise to a *Caremark* claim." *Id.* We agree with this analysis as well as with the district court's conclusion that Black did not produce evidence "to rebut the business judgment rule's presumption of good faith." *Id*.

Black has neither provided evidence that would support a *Caremark* claim nor provided any valid reason to view the facts through a lens other than the business judgment rule, which, for the reasons provided by the district court, the bankruptcy court correctly applied. *See id*.

## IV.

For the foregoing reasons, the district court's affirmation of the bankruptcy court's order granting summary judgment in Brice's favor is affirmed.

*AFFIRMED*

14